## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND    )
ETHICS IN WASHINGTON,    )
    )
Plaintiff,    )
    )
v.    )    Civil No. 08-cv-0576-ESH
    )
MICHAEL LEAVITT, Secretary of the Department )
of Health and Human Services, *et al.*,    )
    )
Defendants.    )
_____)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This lawsuit stems from defendants' violations of the Federal Advisory Committee Act, 5 U.S.C. App. §§ 1, et. seq. ("FACA"). Defendants convened two meetings of an advisory committee in March of 2008, as part of the Department of Health and Human Resource's ("HHS") process of developing major modifications to the standards for the Head Start program administered by HHS. In the operation of this committee, however, defendants failed to comply with the FACA's open meetings and disclosure requirements and failed to charter it as FACA requires. 5 U.S.C. App. §§ 9(c), 10. And in response to CREW's[1] requests for information on these meetings – information that would enable CREW and the public to participate meaningfully as FACA contemplates -- defendants stated only that the meetings were not subject to the FACA and refused to give any further details or explanation.

_____

[1]  CREW is the acronym for plaintiff Citizens for Responsibility and Ethics in Washington.

In this lawsuit defendants continue to insist that the committee that met on two occasions in March 2008 is not subject to the FACA and continue to rely on bald assertions that are completely devoid of any meaningful substance. Specifically, defendants rely on an agency declaration that lacks any necessary facts and instead recites unsupported conclusions that fail to provide this Court with an adequate record from which to conclude that the committee that met in March is not subject to the FACA. Indeed, the facts of this case when properly construed under the governing case law support the conclusion that the committee at issue is subject to the FACA.[2] Under these circumstances, defendants' motion for summary judgment must be denied.

## STATUTORY BACKGROUND

### The Federal Advisory Committee Act

The FACA imposes a number of requirements on committees that are established or utilized by the president or federal agencies to obtain advice or recommendations ("advisory committees"). 5 U.S.C. App. §§ 2 et. seq. The FACA specifically defines "advisory committee" in relevant part to include any "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is (A) established by statute . . . or . . . (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government." 5 U.S.C. App. § 3(2). Advisory committees that meet this definition are subject to the FACA's requirements unless specifically exempted by statute, id. at § 4, or unless all of

---

[2] Alternatively, as will be described below, plaintiff should be given the opportunity to conduct discovery concerning the March 2008 meetings held by defendants.

the committee members are full-time or permanent part-time government officers or employees.  Id. at § 3(2)(C)(i).

Before taking any action, each advisory committee subject to the FACA must file a charter setting forth the committee's objective, activities and duties.  Id. at § 9(c)(2).  In addition, the agency establishing an advisory committee must ensure "the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment."  Id. at §§ 5(b)(3), 5(c).  Congress also mandated that membership in advisory committees be "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee."  Id. at § 5(b).

The FACA also requires advisory committees to provide advance notice of any meetings and open their meetings to the public, id. at § 10(a), unless the agency head determines that the meeting may be closed to the public in accordance with the Government in the Sunshine Act, 5 U.S.C. § 552(b)(c).  5 U.S.C. App. § 10(d).  All meetings must be chaired or attended by an officer or employee of the federal government authorized to adjourn any meeting when he or she deems adjournment in the public interest.  Id. at § 10(e).

In addition, under the FACA, advisory committees must make available for public inspection all "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee," to the extent they are not subject to one of the exemptions in the Freedom of Information Act.  Id. at § 10(b); Food Chemical News v. U.S. Dep't of

<u>Health and Human Services</u>, 980 F.2d 1469, 1472-73 (D.C. Cir. 1992).  Advisory committees must keep and disclose detailed meeting minutes for every meeting that include "a record of the persons present, a complete and accurate description of the matters discussed and conclusions reached, and copies of all reports received, issued, or approved by the advisory committee," along with a signed certification of the minutes.  5 U.S.C. App. § 10(c).  If an advisory committee does not disclose all or part of the minutes of any meeting, it must produce a written determination by the agency head that includes reasons for the non-disclosure.  <u>Id.</u> at § 10(d).

**FACTUAL BACKGROUND**

Plaintiff CREW is a non-profit corporation dedicated to "protecting the rights of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials."  Complaint, ¶ 4.  In particular, CREW monitors closely the laws and rules that apply to government agencies and pushes the U.S. government to take ethics issues seriously.  <u>Id.</u>, ¶ 5.  CREW relies, in part, on various federal disclosure statutes such as the FACA and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for documents to assist it in providing the public with information concerning government decisions and the government decision making process.  <u>Id.</u> at ¶ 4.

<u>**Head Start for School Readiness Act of 2007**</u>

The Head Start for School Readiness Act of 2007, signed into law on December 12, 2007, specifically required defendant HHS, when developing modifications to Head Start performance standards, to "consult with experts in the field of child development, early childhood education, child health care, family services (including linguistically and

4

culturally appropriate services to non-English speaking children and their families),

administration, and financial management, and with persons with experience in the

operation of OHS programs…" 42 U.S.C. § 9836A(a)(2). The Head Start for School

Readiness Act of 2007 did not specifically exempt these consultations from the FACA.

### <u>CREW's FACA Request of February and March 2008</u>

On February 28, 2008, CREW sent a request to Patricia Brown, Acting Director,

Office of Head Start pursuant to the FACA. <u>Letter from Anne Weismann to Patricia</u>

<u>Brown</u>, Feb. 28, 2008 (Exhibit A to Complaint). This letter stated that CREW had been

advised that the Office of Head Start was "holding a meeting next week at which it will

seek the advice and recommendations of a group of private individuals concerning a

massive revision of the Head Start performance standards" and sought information about

the requested meeting as well as a copy of the charter for this advisory committee as

required by the FACA. <u>Id.</u>

Defendants responded by admitting that a meeting was to take place but claimed

the group meeting "is not covered by the Federal Advisory Committee Act because the

purpose of the meeting is for individuals to voice their individual opinions rather than to

consult with the group." <u>Letter from Patricia Brown to Anne Weismann</u>, Feb. 28, 2008

(Exhibit B to Complaint).

Following a March 3, 2008 press release by defendant Michael Leavitt concerning

his FACA Advisory Committee on Re-Designation of Head Start Grantees, CREW again

contacted Ms. Brown and asked if the advisory committee referenced in the press release

"is the same group you referenced in your February 28, 2008 letter?" <u>Letter from Anne</u>

<u>Weismann to Patricia Brown</u>, dated March 4, 2008 (Exhibit D of Complaint).

Defendants responded on March 7, 2008, that "[t]his group is not the same group that you referenced in your February 28, 2008 letter."  Letter from Patricia Brown to Anne Weismann, dated March 7, 2008 (Exhibit E of Complaint), but offered no further explanation or information about the mystery group.  Plaintiff filed its Complaint on April 3, 2008.

### Defendant HHS's March Meetings

According to defendants, in fulfilling the agency's statutory requirement to consult under the Head Start for School Readiness Act, they held two meetings with unnamed "experts" in March of 2008.  See Declaration of Patricia E. Brown at ¶¶ 9-10, 12 ("Brown Decl.") (attached as Exhibit 1 to Defendants' Statement of Material Facts as to Which There is no Genuine Issue).  The participants at these meetings were invited to participate by employees of the Office of Head Start ("OHS").  Id. at ¶9.  The OHS made the arrangements for the meetings and prepared the agenda.  Id. at ¶¶ 13-14.  The OHS took notes of the discussions at the meetings for use in developing modifications with Head Start performance standards. Id. at ¶ 21.  Neither of these two meetings was conducted in compliance with any of the FACA's provisions; instead, defendants have maintained that these meetings were not subject to the provisions of FACA.  Complaint for Declaratory and Injunctive Relief, ¶¶ 18, 20 (hereinafter "Complaint").

Defendants have now moved for summary judgment, arguing that the meetings referenced in the Complaint are not subject to the FACA.

### ARGUMENT

**I.    DEFENDANTS' COMMITTEE, WHICH MET IN MARCH TO HELP DEVELOP HEAD START PERFORMANCE STANDARDS MODIFICATIONS, IS SUBJECT TO THE FACA**

### A.  **Standards for Summary Judgment**

In ruling on a motion for summary judgment, the Court must view the proffered evidence in the light most favorable to the non-moving party and must resolve any doubt against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  Moreover, as the Supreme Court has stressed, the entry of summary judgment is mandated only "**after adequate time for discovery** and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis added).

### B.  **The Committee Was Established By HHS**

The FACA specifically defines "advisory committee" in relevant part to include any "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is (A) established by statute . . . or . . . (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government."  5 U.S.C. App. § 3(2).  For the FACA to apply, the advisory committee must be "established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for" the federal government.  Id. at §3(2)(C).  Advisory committees that meet this definition are subject to the FACA's requirements unless specifically exempted by statute, id. at § 4, or unless all of the committee members are full-time or permanent part-time government officers or employees.  Id. at § 3(2)(C)(i).

Even with the sketchy facts that are known, there can be no doubt that the advisory panel at issue was established by defendants. An agency establishes an advisory panel only if it actually forms the panel. Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 452, 456-57 (1989): Byrd v. EPA, 174 F. 3d 239, 245 (D.C. Cir. 1999). Here, as defendants admit, the meetings were organized by the OHS. Brown Decl. at ¶¶ 9, 12. The OHS selected the members and invited them to attend the meetings. Id., ¶¶ 13, 15. Thus, defendants, and defendants alone, formed the committee and the committee was therefore "established" by the agency within the meaning of the FACA

**C. The Committee Was Utilized By HHS**

Under the FACA, an advisory panel is "utilized" by an agency where it is "amenable to . . . strict management by agency officials." Public Citizen at 457-58; Byrd at 245. This requirement is also met here. The OHS established a detailed agenda for the meetings. Brown Decl. at ¶¶ 14,18. OHS staff took notes of the discussions, id. ¶21, which were held to assist OHS in fulfilling its statutory duty to develop modifications to Head Start performance standards. Id., ¶¶ 10-11. The OHS managed the meetings, even providing travel costs for the out-of-town experts. Id., ¶ 16. Under these facts, HHS clearly "utilized" the committee and accordingly the FACA applies to the committee that convened for two meetings in March 2008.

 Defendants argue nevertheless that the FACA does not apply because "the participants acted as individuals, shared only their individual opinions, took no action as a group, and thus did not function as a committee." Memorandum in Support of Defendants' Motion for Summary Judgment at 11 ("Ds' Mem."). Defendants support these arguments with only the Brown Declaration, which is at such a level of generality

and abstraction that is cannot substitute for the burden of persuasion defendants bear as the moving parties.

For example, Ms. Brown states that the participants attended the meetings in their personal capacities, Brown Decl., ¶ 19, but provides no explanation of how she reached this conclusion. Given Congress' directive to HHS to "consult with experts in the field of child development, early childhood education, child health care, family services (including linguistically and culturally appropriate services to non-English speaking children and their families), administration, and financial management . . .," 42 U.S.C. § 9836A(a)(2), the more logical inference is that these participants were offering expertise derived from their individual organizations – something very different from attending in a purely "personal capacity."

Similarly, Ms. Brown claims that the experts took no action as a group, id., ¶¶ 18, 20, but does not explain what "took no action as a group" even means. Indeed, Ms. Brown has offered no evidence or explanation whatsoever about how the group discussions that took place at the meetings were actually conducted or, for that matter, any information about any discussions at the meetings, individual or otherwise. Her conclusory statements, standing alone, are simply insufficient to support defendants' claim that the meetings need not comply with the FACA.

Ms. Brown also states that the participants provided no recommendations to OHS staff at the meeting. Id., ¶ 20. But she never explains the difference between a "personal view," which she alleges was all each of the participants offered at the meetings, id., ¶ 18 and a "recommendation." Id., ¶20. Finally, Ms. Brown does not explain how the answers to the questions that HHS's letter to participants indicated were to be discussed at the

meetings (<u>e.g.</u>, "if you were developing or amending standards in your field, what would they look like?"), <u>id.</u>, ¶14, were not recommendations.

Defendants also discount the significance of the fact that the OHS chose the experts and set the agenda, citing <u>Natural Resources Defense Council v. EPA</u>, 806 F.Supp. 275 (D.D.C. 1992). But unlike here, the group at issue in that case -- the Governor's Forum on Environmental Management -- was not chosen by the government, nor did the government set that group's agenda. <u>Id.</u> at 278.

In short, the government has not met its factual burden of establishing that the FACA does not apply to the March 2008 meetings. Stringing together a series of conclusions in a declaration – which is what defendants have done here – is no substitute for the specific facts that would establish, as a matter of fact and law that the committee is not subject to the FACA.

Further, the case law cited by defendants to support their contention that the committee that met twice in March 2008 is not subject to the FACA fails to establish that the committee is not an advisory committee subject to the FACA. Defendants rely specifically on a passage from <u>Ass'n of Am. Physicians & Surgeons v. Clinton</u>, 997 F.2d 898 (D.C. Cir. 1993), where the court, in remanding the action to the district court for further findings on the character of the advisory group at issue, explained the continuum that various entities present for analysis under the FACA. <u>Id.</u> at 915. At one end of that continuum, where the FACA does not apply, is an "unstructured arrangement in which the government seeks advice from what is only a collection of individuals who do not significantly interact which each other. . ." <u>Id.</u> While the Brown Declaration appears to be constructed to fit to this end of the continuum, Ms. Brown's descriptions of the March

2008 meetings are so devoid of facts as to establish nothing about how the group actually functioned.  Indeed, from Congress' description of the consultation in which HHS was required to engage, the committee that met on two occasions in March 2008 seems more like "a formal group of a limited number of private citizens who are brought together to give publicized advice as a group," and therefore at the FACA end of the continuum.  Id.

Defendants' reliance on other case law also fails to establish that this advisory group was not subject to the FACA.  In Huron Environmental Activist League v. EPA, 917 F. Supp. 34 (D.D.C. 1996), the court concluded that an industry group that met with the government was not a FACA committee, based on a vastly different kind of group and its interactions than are at issue here.  Id., at 42.  At issue there were two private trade associations, not formed by the government, who were not subject to actual management or control by the government.  Id. at 40.  Here, by contrast, the various experts were assembled as a group by the government and under the management of the OHS.  Brown Decl., ¶¶ 9, 13-14.

Defendants' reliance on Am. Soc. Of Dermatology v. Shalala, 962 F. Supp. 141 (D.D.C. 1996), is equally unavailing.  Defendants quote extensively from that court's conclusion that the agency's use of physician panels to rate work values of medical procedures did not implicate the FACA.  But defendants ignore critical differences from the case at hand.  For example, a key factor in the court's conclusion that FACA did not apply was "the confidentiality of the individual panelist's ratings."  Id. at 148.  There is no showing here, by contrast, that the assembled experts were subject to confidentiality in their statements and interactions.  Nor were the experts here rating technical surgical procedures.  Instead, they were assisting the OHS in developing performance standards

11

for the Head Start Program, a process that innately involves the kind of consultation that implicates the FACA.

Defendants next cite Grigsby Brandford & Co., Inc. v. U.S., 869 F. Supp. 984 (D.D.C.1984), for the proposition that FACA is not violated by a group that has "no structure or organization." Id. at 2002. As demonstrated by the Brown Declaration, however, the group convened for the March 2008 meetings had a structure and organization and was controlled by the government. Brown Decl., ¶¶ 14,18. Defendants' citation to Nat'l Resources Defense Council v. Herrington, 637 F. Supp. 116 (D.D.C. 1986), is also inapposite. There the court concluded that a group of experts reporting individually on a question as to the continued operation of a government- owned nuclear reactor was not a FACA committee. Id. at 119. Meetings for the purpose of reporting on the operation of a nuclear reactor are completely dissimilar to the meetings that occurred here, which were required by statute for the purpose of getting expert input on the agency's development of performance standards for the Head Start program.

At bottom, defendants' contorted efforts to fit this case into the model that courts have accepted as not implicating the FACA must fail. The committee at issue here "was a consultative assembly of knowledgeable persons for a specific purpose . . ." Northwest Forest Res. Council v. Espy, 846 F. Supp. 1009, 1012 (D.D.C. 1994). As such, "it was both 'established' and 'utilized'" by the government for devising policy."). Id. Accordingly, defendants' motion must be denied.

## II. ALTERNATIVELY, PLAINTIFF MUST BE AFFORDED DISCOVERY

As set forth above, this Court can properly deny defendants' motion on the basis that defendants have failed to meet their burden of proving that the committee at issue is

not subject to the FACA.  Alternatively, plaintiff should be afforded discovery to develop

the facts that would establish the true nature of the committee, how it actually functioned

and how its participants interacted with each other and with HHS.

 A party opposing a motion for summary judgment is eligible for discovery where

the party shows by affidavit that, for specified reasons, it cannot present facts essential to

justify its opposition.  Fed. R. Civ. P. 56(F).  Defendants have rebuffed every effort by

plaintiff to ascertain the underlying facts and, once in litigation, have proffered only the

completely conclusory declaration of Ms. Brown.[3]  As the Declaration of Scott A. Hodes

("Hodes Decl.") demonstrates, CREW has established that all of the facts relevant to the

March 2008 meeting are maintained by defendants and discovery will shed light on the

committee at issue and allow the Court to determine whether it is subject to the FACA.

Hodes Decl. ¶¶ 3,6.  Plaintiff cannot, on its own present facts essential to its opposition.

CREW has therefore, "state[] concretely why additional discovery is needed to oppose a

motion for summary judgment."  Messina v. Krakower, 439 F.3d 755, 762 (D.C. Cir.

2006)(quoting Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 861

(D.C. Cir. 1989)).  Indeed, discovery is the norm in FACA cases.  See Am. Ass'n of

Surgeons & Physicians v. Clinton, 997 F. 2d. at 915 (discovery granted upon remand for

further findings on character of working group).

 Further, plaintiff has consistently pursued this information.  Plaintiff sought in its

contacts with defendants counsel following the filing of the Complaint in this matter.  See

---

[3] Defendants' statements about who the unnamed experts were that attended the March
2008 meetings, how they presented opinions at the meetings, on whose behalf these
opinions were made, their relationship to organizations, and how the opinions of the
experts were utilized by OHS either provide no specific details or are merely conclusory
in nature.  Brown Declaration, ¶¶13-22.

Hodes Decl., ¶4.  Further, as the parties were not required to have a meet and confer

conference pursuant to FRCP 26(f)(1) and defendants filed their answer concurrently

with its motion for summary judgment, plaintiff has had no opportunity to seek Rule 26

discovery in this matter.  Id., ¶5.  Thus, plaintiff has been diligent pursuing this material

and should be granted Rule 56(f) discovery.  Berkely v. Home Ins. Co., 68 F.3d 1409,

1414 (D.C. Cir. 1995).

    To address this issue, plaintiffs will need discovery on who the experts in

attendance were, how they were selected for attendance, their organizational attachments,

specific details of the workings of the March 2008 meetings, including the nature of the

contributions each expert made and how they functioned as a group, and the process by

which the OHS used or is using the data culled from the meetings to recommend updates

to Head Start performance standards.  Hodes Decl., ¶ 6.

    Much of this discovery can be accomplished through the use of interrogatories,

admissions and requests for production of documents.  In the final analysis, however,

plaintiff will need to conduct targeted depositions of individuals who can speak to what

actually happened at the March 2008 meetings and the defendants' subsequent use of the

results of those meetings.  Id., ¶7.

    The government will undoubtedly argue that discovery is unnecessary and that it

should be first given an opportunity to further supplement the records.  Such a request

should not be granted.  However, as stated previously, prior to the defendants' motion for

summary judgment, plaintiff asked for further details about the March 2008 meetings and

defendant declined to provide these details.  See Id. ¶4.  Indeed, even before filing suit

plaintiff attempted to get additional information from the defendants but its requests were

rejected in toto.  Having elected to base their motion for summary judgment on selective

facts and conclusory statements about the March 2008 meetings, defendants are not

entitled to a proverbial second bite of the apple.  Accordingly, plaintiff's alternative

request for discovery should be granted.

<u>Conclusion</u>

For the reasons set forth above, defendants have failed to establish that the March

2008 meetings held by defendants were not meetings within the meaning of FACA.

Plaintiff therefore requests that defendants' motion for summary judgment be denied, that

defendants be ordered to immediately follow the requirements of FACA for these

meetings.

Dated:  July 22, 2008                    Respectfully submitted,


_____/s/_____
Scott A. Hodes (D.C. Bar No. 430375)
Scott A. Hodes, Attorney at Law
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (413) 641-2833


_____/s/_____
Anne L. Weisman (D.C. Bar No. 298190)
Melanie Sloan (D.C. Bar No. 434584)
Citizens for Responsibility
And Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, D.C.  20005
Phone (202) 408-5565
Fax (202) 566-5020

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND    )
ETHICS IN WASHINGTON,              )
                                   )
Plaintiff,                         )
                                   )
v.                                 )         Civil No. 08-cv-0576-ESH
                                   )
MICHAEL LEAVITT, Secretary of the Department )
of Health and Human Services, *et al.*,      )
                                   )
Defendants.                        )
_____)

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h) and 56.1, plaintiff hereby responds to defendants' statement of material facts not in genuine dispute:

1. Plaintiff admits that on February 28, 2008, it sent a letter to defendants stating that CREW had been advised that the Office of Head Start was "holding a meeting next week at which it will seek the advice and recommendations of a group of private individuals concerning a massive revision of the Head Start performance standards" and that it sought information about the requested meeting as well as a copy of the charter for this advisory committee as required by the FACA. Plaintiff refers the Court to that request for a full and complete statement of its contents.

2. Plaintiff admits that on February 28, 2008, defendants responded to its February 28, 2008 letter and refers the Court to that letter for a full and complete statement of its contents.

3. Plaintiff admits that on March 4, 2008, it sent a letter to defendants and refers the Court to that letter for a full and complete statement of its contents.

4.  Plaintiff admits that on March 7, 2008, defendants responded to plaintiff's March 4, 2008 letter and refers the Court to that letter for a full and complete statement of its contents.

5.  Plaintiff admits it filed the instant lawsuit on April 3, 2008.

6.  This paragraph is a description of the goals of the Head Start program as set forth in Ms. Brown's declaration which speaks for itself.  Plaintiff disputes the materiality of these facts.

7.  This paragraph is a description of the defendants' administration of Head Start or the Head Start program itself as set forth in Ms. Brown's declaration which speaks for itself.  Plaintiff denies the materiality of these facts.

8.  This paragraph is a description of two meetings organized by Office of Head Start ("OHS") as set forth in Ms. Brown's declaration which speaks for itself.  Plaintiff admits that the lawsuit relates to the two meetings organized by the OHS that occurred on March 4-5, 2008 and March 25-26, 2008 at the Hotel Palomar in Arlington, Virginia. See Brown Decl., ¶9.  Plaintiff can neither admit nor deny that attendees at the meetings included experts from various fields, including early childhood education, child health care, family services (including linguistically and culturally appropriate services to non-English speaking children and their families), administration, and financial management, and experience in the operation of Head Start programs as the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof, defendants have refused to respond fully to plaintiff's previous requests for information, and plaintiff needs discovery.  See Declaration of Scott Hodes, ¶¶2-3.  For these same reasons, plaintiff can neither admit

2

nor deny that experts attending the March 25-26, 2008, meeting were also experienced in their applications to tribal areas. Id.

9.  Plaintiff can neither admit nor deny that the purpose of the meetings was for OHS staff to fulfill a statutory obligation to consult with subject-matter experts in these fields prior to proposing modifications to Head Start's performance standards for its agencies and grantees as the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof, defendants have refused to respond fully to plaintiff's previous requests for information, and plaintiff needs discovery.  See Declaration of Scott Hodes, ¶¶2-3. Plaintiff admits that the Head Start for School Readiness Act of 2007 required a consultation with experts in developing any modifications to Head Start performance standards.

10.  Plaintiff admits that 42 U.S.C. § 9836A(a)(2) sets forth an obligation on defendants to consult with experts in developing any modifications to Head Start performance standards.

11.  Plaintiff can neither admit nor deny that the OHS organized the March 2008 meetings to fulfill its statutory obligation to consult with experts prior to proposing changes to its program performance standards by regulation applicable to Head Start agencies and programs as the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof, defendants have refused to respond fully to plaintiff's previous requests for information, and plaintiff needs discovery.  See Declaration of Scott Hodes, ¶¶2-3.

Plaintiff admits that the last time the performance standards were revised was in 1993-1994 but avers that this is not material to the case at issue.

    12.  Plaintiff can neither admit nor deny that OHS invited a number of experts – approximately 50 – to attend the March 2008 performance standard meetings and that OHS officials informed the experts attending the meetings that they were there to "help inform the Federal Staff of the 'state of the art' in areas relevant to Head Start," as the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof, defendants have refused to respond fully to plaintiff's previous requests for information, and plaintiff needs discovery.  <u>See</u> Declaration of Scott Hodes, ¶¶2-3.  Plaintiff admits that some of the questions OHS staff wanted to discuss at the meetings included:

> What are the most significant advances in your field?
>
> What do you consider to be the best practices in your field?
>
> If you were developing or amending standards in your field, what would they look like?
>
> Where has Head Start excelled in delivering services to children and families and where could we do better?
>
> How can the current standards be improved to allow for more clarity, to improve collaboration, and to best support services to children and families?

<u>See</u> Brown Decl., ¶ 14, Ex. A.

    13.  Plaintiff can neither admit nor deny that OHS selected the experts to invite through a process that involved researching and finding experts in the statutorily-mandated fields (early childhood education, child health care, family services (including linguistically and culturally appropriate services to non-English speaking children and their families), administration, and financial management, and with persons with

experience in the operation of Head Start programs), and then contacting those experts to determine if they were available for, and interested in, the March 2008 performance standard meetings as the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof, defendants have refused to respond fully to plaintiff's previous requests for information, and plaintiff needs discovery.  See Declaration of Scott Hodes, ¶¶2-3.

14.  Plaintiff can neither admit nor deny that for experts attending the March 2008 performance standard meetings, OHS agreed to pay their travel costs (if they resided more than 50 miles outside of downtown Washington, D.C.), their hotel stay, a per diem for meals, and an honorarium of $200 per day for participating in the conference as the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof, defendants have refused to respond fully to plaintiff's previous requests for information, and plaintiff needs discovery.  See Declaration of Scott Hodes, ¶¶2-3.

15.  Plaintiff denies that the attendees for the March 2008 performance standards meetings did not have an organized structure or fixed membership, that there was no attempt to achieve consensus among those attending, and that they convened only to offer their own opinions regarding their individual areas of expertise as the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof.

16.  Plaintiff admits that the agendas for the meetings provided for both large group and small group discussions.  See Brown Decl., ¶ 18, Exs. C-D.  Plaintiff can neither admit nor deny that during these discussions, the experts shared their personal

5

views on various issues, including (but not limited to) questions regarding appropriate

quality and outcome measures in areas of education, health services, nutrition and

assessment; the attendant costs to grantees of imposing rigorous standards; and whether

standards should be tied to what is customary and usual in state licensing, health and

other requirements as the evidence defendants have put before the Court consists of

conclusory statements lacking the requisite specificity to carry the government's burden

of proof, defendants have refused to respond fully to plaintiff's previous requests for

information, and plaintiff needs discovery.  <u>See</u> Declaration of Scott Hodes, ¶¶2-3.  For

these same reasons, plaintiff can neither admit nor deny that other than the agenda, which

set forth the meeting schedule, the March 2008 performance standards meetings had no

structure or organization and represent the only occasion on which these two groups of

experts were ever convened.  <u>Id</u>.

      17.  Plaintiff can neither admit nor deny that the experts were also attending the

meeting in their personal capacities, were not asked to convey the views of their various

organizations, that the experts did not take any positions as a group, and they did not

provide any recommendations to OHS staff who attended the meeting as the evidence

defendants have put before the Court consists of conclusory statements lacking the

requisite specificity to carry the government's burden of proof, defendants have refused

to respond fully to plaintiff's previous requests for information, defendants have not

defined what they mean by "personal capacities" and plaintiff needs discovery.  <u>See</u>

Declaration of Scott Hodes, ¶¶2-3.

      18.  Plaintiff can neither admit nor deny that OHS staff attending the March 2008

performance standard meetings listened to what the experts had to say and that no

documents were generated as a result of the meeting (other than notes) as the evidence

defendants have put before the Court consists of conclusory statements lacking the

requisite specificity to carry the government's burden of proof, defendants have refused

to respond fully to plaintiff's previous requests for information, and plaintiff needs

discovery.  <u>See</u> Declaration of Scott Hodes, ¶¶2-3.  For these same reasons, plaintiff can

neither admit nor that the input provided by the experts attending the March 2008

performance standards meetings was provided only on an individual basis.  <u>Id</u>.

19.  Plaintiff can neither admit nor deny that OHS has not followed-up or

contacted these experts since the March 2008 performance standards meetings concluded

as the evidence defendants have put before the Court consists of conclusory statements

lacking the requisite specificity to carry the government's burden of proof, defendants

have refused to respond fully to plaintiff's previous requests for information, and plaintiff

needs discovery.  <u>See</u> Declaration of Scott Hodes, ¶¶2-3.

20.  Plaintiff can neither admit nor deny that OHS is currently working on

proposed modifications to performance standards for agencies and grantees, that these

modifications will eventually be published as a notice of proposed rulemaking on the

Federal Register and that interested persons and organizations will be given the

opportunity to comment on any proposed changes to the Head Start performance

standards before any changes are finalized as the evidence defendants have put before the

Court consists of conclusory statements lacking the requisite specificity to carry the

government's burden of proof, defendants have refused to respond fully to plaintiff's

previous requests for information, and plaintiff needs discovery.  <u>See</u> Declaration of Scott

Hodes, ¶¶2-3.  In addition, plaintiff denies the materiality of these assertions.

21.  Plaintiff can neither admit nor deny that the groups who attended the March

2008 performance standards meetings are not the same as the formal advisory committee

on Re-Designation of Head Start Grantees convened by Secretary Leavitt and chartered

on January 8, 2008, as the evidence defendants have put before the Court consists of

conclusory statements lacking the requisite specificity to carry the government's burden

of proof, defendants have refused to respond fully to plaintiff's previous requests for

information, and plaintiff needs discovery.  <u>See</u> Declaration of Scott Hodes, ¶¶2-3.

Plaintiff admits that the Committee on Re-Designation of Head Start Grantees is a formal

advisory committee and is subject to all the provisions of the FACA.  <u>See</u> Brown Decl., ¶

24.

Dated July 22, 2008                          Respectfully submitted,

                                                /s/

Scott A. Hodes (D.C. Bar No. 430375)
Scott A. Hodes, Attorney at Law
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (413) 641-2833

Anne L. Weismann (D.C. Bar No. 298190)
Melanie Sloan (D.C. Bar No. 434584)
Citizens for Responsibility
And Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, D.C.  20005
Phone (202) 408-5565
Fax (202) 566-5020

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
                                 )
Plaintiff, )
                                 )
v. )                                Civil No. 08-cv-0576-ESH
                                 )
MICHAEL LEAVITT, Secretary of the Department )
of Health and Human Services, *et al.*, )
                                 )
Defendants. )
_____)

**PLAINTIFF'S RULE 56(f) Declaration**

I, Scott A. Hodes, hereby declare as follows:

1.) I am Scott A. Hodes, counsel for plaintiff in the above-captioned matter. I make this declaration in support of plaintiff's request for discovery as set forth in plaintiff's opposition to defendants' motion for summary judgment ("D's Mem.").

2.) Plaintiff seeks discovery in this matter on information maintained and held only by the defendants. This information is material to the issue of whether the March 4-5, 2008 and March 25-26, 2008 meetings ("March 2008 meetings") organized, hosted and held by defendants were covered by the Federal Advisory Committee Act, 5 U.S.C. App. §§ 1, <u>et</u>. <u>seq</u>. ("FACA"). Without these facts, plaintiff cannot fully respond to defendants' motion for summary judgment.

3.) All of the relevant evidence concerning the March 2008 meetings rest solely with the government.

4.) Plaintiff has attempted to receive this information from the government since the filing of this lawsuit. See Letter from Scott Hodes to Diane Kelliher, attached as Exhibit 2 of Ds' Mem.

5.) Further, as the parties were not required to have a meet and confer conference pursuant to Fed. R. Civ. P. 26(f)(1) and defendants filed their answer concurrently with their motion for summary judgment, plaintiff has had no opportunity to seek discovery in this matter.

6.) Plaintiff seeks discovery on who the experts in attendance were at the March meetings, their organizational attachments, specific details of the workings of the March 2008 meetings, and the process by which the OHS used or is using the data culled from the meetings to recommend updates to Head Start performance standards.

7.) This discovery can be accomplished through the use of interrogatories, admissions and requests for production of documents. Plaintiff will also need to conduct targeted depositions of individuals who can speak to the actual details of the March 2008 meetings and the subsequent use of the results of those meetings

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 22, 2008                              Respectfully submitted,


_____/s/_____
Scott A. Hodes (D.C. Bar No. 430375)
Scott A. Hodes, Attorney at Law
P.O. Box 42002
Washington, D.C. 20015
Phone (301) 404-0502
Fax (413) 641-2833

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON,            )
                                 )
Plaintiff,                       )
                                 )
v.                               )    Civil No. 08-cv-0576-ESH
                                 )
MICHAEL LEAVITT, Secretary of the Department )
of Health and Human Services, *et al.*,     )
                                 )
Defendants.                      )
_____)

**ORDER**

     The Court having considered defendants' motion to for summary judgment,

plaintiff's opposition thereto and the entire record herein, it is hereby

     ORDERED that defendants' motion is denied and it is further

     ORDERED that plaintiff's are awarded discovery concerning the facts that would

establish the true nature of the meetings referenced in its February 28, 2008 request, how

these meetings actually functioned and how the participants interacted with each other

and with HHS .

DATED_____          _____
                               ELLEN SEGAL HUVELLE
                               UNITED STATES DISTRICT JUDGE