**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) | CV-08-0576 (ESH) |
| vs. | ) ) ) | |
| MICHAEL LEAVITT, SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, and | ) ) ) ) | |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN FURTHER**
**SUPPORT OF DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT**

GREGORY G. KATSAS
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
Federal Programs Branch

DIANE KELLEHER
Senior Counsel

*Counsel for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      SUMMARY JUDGMENT SHOULD BE GRANTED TO
           DEFENDANTS BECAUSE THE DECLARATION OF
           HEAD START DIRECTOR BROWN ESTABLISHES THAT
           THE MARCH 2008 PERFORMANCE STANDARD MEETINGS
           WERE NOT SUBJECT TO FACA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.     SUMMARY JUDGMENT SHOULD BE GRANTED TO
           DEFENDANTS BECAUSE CASELAW DEMONSTRATES
           THAT THE MARCH 2008 PERFORMANCE STANDARDS
           MEETINGS DID NOT RISE TO THE LEVEL OF GROUP
           ACTION REQUIRED OF A FACA COMMITTEE. . . . . . . . . . . . . . . . . . . . . . . . 5

    III.    THIS COURT SHOULD NOT ORDER DISCOVERY PURSUANT
           TO FEDERAL RULE OF CIVIL PROCEDURE 56(f). . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**CASES**                                                                                                                              **PAGE(S)**

American Soc. of Dermatology v. Shalala, 962 F. Supp. 141
 (D.D.C. 1996). ................................................................................................... 6, 10

Association of American Physicians and Surgeons, Inc. v. Clinton,
 997 F.2d 898 (D.C. Cir. 1993). ..................................................................... *passim*

Byrd v. EPA, 174 F.3d 239 (D.C. 1999)...................................................................... 10

Carpenter v. Federal Nat. Mortg. Ass'n, 174 F.3d 231 (D.C. Cir. 2003). .................. 11

Dunning v. Quander, 508 F.3d 8 (D.C. Cir. 2007). ............................................... 11, 12

Exxon Corp. v. FTC, 663 F.2d 120 (D.C. Cir.1980). .................................................. 11

Greenberg v. FDA, 803 F.2d 1213 (D.C. Cir. 1986). .................................................. 11

Grigsby Brandford & Co., Inc. v. U.S., 869 F. Supp. 984 (D.D.C. 1994). ................... 7

Heartwood v. United States Forest Serv., 431 F. Supp. 2d 28 (D.D.C. 2006) .............. 8

Huron Envt'l Activist League v. EPA, 917 F. Supp. 34 (D.D.C. 1996). .............. *passim*

Iturralde v. Comptroller of Currency, 315 F.3d 311 (D.C. Cir. 2003).......................... 3

McVan v. Bolco Athletic Co., 600 F. Supp. 375 (E.D. Pa. 1984). ............................. 11

Military Audit Project v. Casey, 656 F.2d 724 (D.C. Cir. 1981) ................................ 11

Natural Resources Defense Council v. Herrington, 637 F. Supp. 116
 (D.D.C. 1986). ................................................................................................. 7

Northwest Forest Res. Council v. Espy, 846 F. Supp. 1009
 (D.D.C. 1994). .............................................................................................. 7, 8

Public Citizen v. Department of Justice, 491 U.S. 440 (1989)...................................... 7

SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197 (D.C. Cir. 1991) . ............................ 4

Strang v. U.S. Arms Control and Disarmament Agency, 864 F.2d 859
    (D.C. Cir. 1989). ............................................................................................... *passim*

### REGULATIONS AND ORDERS

Executive Order 12024 (1974)................................................................................................. 8

41 C.F.R. § 102-3.40(e) (2008)............................................................................................... 8

## INTRODUCTION

In its opposition to Defendants' summary judgment motion, Plaintiff mischaracterizes the factual support for Defendants' motion; draws irrelevant distinctions between this case and those cited by Defendants in their motion; and repeatedly asserts that it is somehow being treated unfairly because it is facing a pre-discovery motion for summary judgment. The Opposition brief generally relies on adjectives and pronouncements in order to try and create a genuine issue of material fact where none exists. These rhetorical techniques carry no persuasive weight and fail to advance any substantive basis on which Defendants' motion for summary judgment should be denied. The March 2008 performance standard meetings organized by the Office of Head Start were not subject to the Federal Advisory Committee Act ("FACA"), and summary judgment should therefore be entered for Defendants. Plaintiff's fall-back position, an invocation of Rule 56(f), boils down to an argument that since everything the government says could be untrue, Plaintiff must have discovery in order to see if that is the case. Such speculative and unfounded reasoning does not suffice for the award of Rule 56(f) discovery. The Court should grant Defendants' motion.

## ARGUMENT

**I.    SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE THE DECLARATION OF HEAD START DIRECTOR BROWN ESTABLISHES THAT THE MARCH 2008 PERFORMANCE STANDARD MEETINGS WERE NOT SUBJECT TO FACA.**

In its Opposition, Plaintiff repeatedly says that the Declaration Patricia Brown, the Acting Director of the Office of Head Start ("OHS") is "conclusory" and thus cannot support Defendants' motion for summary judgment. This argument fails for two reasons.

First, Plaintiff's opposition ignores the specific details that are set forth in Director Brown's Declaration. For example, Plaintiff contends that Director Brown's statement that the experts who attended the March 2008 performance standards meetings attended in their personal capacities is conclusory because she "provides no explanation of how she reached this conclusion." Opp. at 9.[1] But given that Director Brown's office <u>invited</u> the experts to attend the March 2008 performance standard meetings – and thus set the terms of their participation – she is the person best-suited to explain the basis on which the meeting invitations were extended. <u>See</u> Brown Decl., ¶ 19 (experts attended meetings "in their personal capacities and were not asked to convey the views of their various organizations.").[2] Plaintiff's contention that the March 2008 performance standard meeting participants "were offering expertise derived from their individual organizations" (Opp. at 9) entirely misses the point. While the experts were invited because of

---

[1] Plaintiff's lawsuit relates to two meetings that were organized by the Office of Head Start within the Department of Health and Human Services ("OHS"). Brown Decl. at ¶ 9. These meetings occurred in March 2008; the first meeting occurred on March 4-5, 2008, and the second meeting took place on March 25-26, 2008. <u>Id.</u> Both were held at the Hotel Palomar in Arlington, VA. <u>Id.</u> Attendees at the meetings included OHS staff and experts from various fields. <u>Id.</u> These fields included early childhood education, child health care, family services (including linguistically and culturally appropriate services to non-English speaking children and their families), administration, and financial management, and experience in the operation of Head Start programs. <u>Id.</u> Experts attending the March 25-26, 2008 meeting were also experienced in these areas and their applications to tribal areas. <u>Id.</u> The meetings will be referred to herein as "the March 2008 performance standard meetings."

[2] Moreover, the Brown Declaration also indicated that it was the <u>individuals</u> – and not their <u>organizations</u> – that were invited to attend the March 2008 performance standard meetings. <u>See</u> Brown Decl., ¶ 15 ("OHS selected the experts to invite through a process that involved researching and finding experts in the statutorily-mandated fields noted above, and then contacting those experts to determine if they were available for, and interested in, the March 2008 performance standard meetings."). The letters sent to the meeting attendees also demonstrate that there was no expectation that those attending the March 2008 performance standard meetings were attending with any official authority. <u>See</u> Brown Decl., Exs. A-B (letters addressed to "Dear Colleague").

their expertise, they were not asked to take an official position on behalf of any larger organization to which they belonged.

Likewise, Plaintiff disbelieves Director Brown's statement that "the experts took no action as a group," because she supposedly did not explain what this language meant. Opp. at 9. Plaintiff's argument fails to take account of the other details included in Director Brown's declaration, such as: (i) "[t]he attendees for the March 2008 performance standards meetings did not have an organized structure . . . ." (Brown Decl., ¶ 17); (ii) the discussions were "loose and unstructured" (id.); (iii) there was no "attempt to achieve consensus among those attending" (id.); (iv) other than the agenda, the March 2008 performance standards meetings "had no structure or organization" (id. at ¶ 18); (v) the attendees "did not take any positions as a group, and they did not provide any recommendations to OHS staff who attended the meeting" (id. at ¶ 20); and (vi) the meeting attendees shared their personal views (id. at ¶ 18) and provided input "only on an individual basis" (id. at ¶ 21).[3] In addition, Plaintiff's stated inability to understand this point is belied by the specific information contained in the Brown Declaration (as detailed above), as well as its citation to the Association of American Physicians and Surgeons, Inc. v. Clinton, 997 F.2d 898, 910-915 (D.C. Cir. 1993), in which the D.C. Circuit spent several pages of its opinion describing the differences between a collection of individuals assembled for a meeting and a FACA committee and even uses the phrase "act as a group."

---

[3] Labeling something as conclusory does not make it so. Cf. Iturralde v. Comptroller of Currency, 315 F.3d 311, 314 (D.C. Cir. 2003) ("Moreover, Dueñas's briefs on appeal state only that the affidavit was conclusory, without further argumentation or further elaboration; this is the type of 'asserted but unanalyzed' contention that is insufficient to preserve the issue on appeal even if he had raised it in the district court.") (internal citations omitted).

Similarly, Plaintiff argues that Director Brown has confused the issue of whether the experts at the March 2008 performance standards meetings provided "recommendations" or "personal view[s]." Opp. at 9. But her declaration is clear on this point; while the attendees shared their personal views on various topics at the March 2008 performance standard meetings they did not take action as a group. See Brown Decl., ¶¶ 17-20, Exs. A-D. They did not vote; they did not produce a unified report; and they did not agree on a set of recommendations to share with OHS. Id. This absence of this kind of group action renders FACA inapplicable to the March 2008 performance standard meetings because FACA committees are more than "just mechanisms for transmitting policy advice on a particular subject matter to the government." Association of American Physicians and Surgeons, 997 F.2d at 914. Committees are subject to FACA "only insofar as their members act as a group. The whole, in other words, must be greater than the sum of the parts." Id. (emphasis added); see also 14 Op. Off. Legal Counsel 53, 55 (1990) ("As a matter of statutory construction, we believe that FACA does not apply to a group which simply acts as a forum to collect individual views rather than to bring a collective judgment to bear."). The necessary features of a FACA committee are not present in this case.

Plaintiff's second challenge to the Brown Declaration relies on the suggestion that it is somehow nothing more than a series of "contorted effort to fit this case into the model that courts have accepted as not implicating the FACA . . . ." Opp. at 12. This suggestion, which would mean that Director Brown fabricated the content of her declaration after reviewing relevant D.C. Circuit case law, should be rejected, as it is counter to the long-standing and well-established presumption of good faith that attaches to an agency's declaration. See, e.g., SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991) (holding agency affidavits regarding

completeness of discovery response "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.") (internal citation and quotation marks omitted).  The record contains sufficient detail about the workings of the March 2008 performance meetings for the Court to conclude that they were not covered by FACA and enter summary judgment for Defendants.

**II.    SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE CASELAW DEMONSTRATES THAT THE MARCH 2008 PERFORMANCE STANDARDS MEETINGS DID NOT RISE TO THE LEVEL OF GROUP ACTION REQUIRED OF A FACA COMMITTEE.**

Virtually unable to cite any case law in support of its opposition, Plaintiff instead relies on immaterial distinctions between the cases cited in Defendants' opening brief and the present matter.  For example, Defendants cited Huron Envt'l Activist League v. EPA, 917 F. Supp. 34, 42 (D.D.C. 1996), for the proposition that "private trade associations with no specific purpose other than to represent the broad interests of their members" lack the requisite formality and structure of an advisory committee.  Defs. Mem. at 14.  In its Opposition, Plaintiff points out that the two groups involved in Huron were not formed or controlled by the government (a fact already evident from Defendants' opening brief).[4]  Opp. at 10.  Yet Huron is still relevant to this case because although the court did determine that the two trade associations had not been "utilized" by the EPA, it went on to say that the associations' lack of a formal structure was a separate and independent reason that the court granted summary judgment to the government on plaintiff's FACA claim.  See Huron, 917 F. Supp. at 42 ("Accordingly, because the industry group was not established nor is it utilized within the meaning of the FACA, and because it lacks

---

[4]  The fact that Head Start organized and planned the March 2008 performance meetings was not disputed by Defendants.

the structure of an advisory committee, the Court shall grant the defendant's Motion for Summary Judgment.") (emphasis added).

With respect to American Soc. of Dermatology v. Shalala, 962 F. Supp. 141, 148 (D.D.C. 1996), Plaintiff notes that a "key factor" in the court's determination that FACA did not apply was the "confidentiality of the individual panelists' ratings." Opp. at 11. The Huron opinion, however, merely sets forth the "main factors" supporting the court's conclusion. See 962 F. Supp. at 148 ("The main factors leading to the Court's determination that the panels fall on the non-advisory committee end of the continuum are the lack of fixed membership for the panels, the annual change in panelists, that each panel is convened only once, that each panelist gives his or her individual work value rating on a form at the end of the process, the confidentiality of the individual panelists' ratings, and the absence of any attempt to achieve a consensus among the panelists.") (emphasis added). Accordingly, while the discussions at the March 2008 performance standard meetings were not confidential, they were in other respects similar to those that occurred in the American Society case. The March 2008 performance standard meetings were of a limited duration (Brown Decl., ¶ 22); those attending shared their individual views (id. at ¶¶ 17, 21); and there was no effort to "achieve a consensus" among those attending the meetings (id. at ¶ 17).

Plaintiff also point to another difference in American Soc. of Dermatology from the present case – the relative importance of the subject-matter of the discussions. Opp. at 11-12. There is nothing in the text of FACA that would support this view (and the importance of a meeting's subject-matter would likely be so subjective a standard that it would be nearly impossible to apply). Moreover, the March 2008 performance standard meetings were the first

part of an overall process through which the agency plans to propose, via notice and comment rulemaking, changes to its performance standards. Brown Decl., ¶ 23. At that time, Plaintiff – and others – will have a chance to comment on any revised performance standards that are proposed.[5]

Plaintiff makes no real effort to distinguish Grigsby Brandford & Co., Inc. v. U.S., 869 F. Supp. 984, 1002 (D.D.C. 1994), but argues the case is not relevant, because the March 2008 performance standards meetings had a "structure and organization and was [sic] controlled by the government." Opp. at 12. This is untrue (as noted above), and, more importantly, the overall point that both Grigsby and Public Citizen v. Department of Justice, 491 U.S. 440, 453 (1989), underscore has particular relevance here, i.e., that FACA is "not intended to cover every formal or informal consultation between the President or an Executive agency and a group rendering advice." 869 F. Supp. at 984 (internal citation and quotation marks omitted).

The only case Plaintiff is able to cite affirmatively in support of its Opposition, Northwest Forest Res. Council v. Espy, 846 F. Supp. 1009, 1012 (D.D.C. 1994), actually reinforces why the March 2008 performance standards meetings did not implicate FACA. In Northwest Forest, the group at issue (known as FEMAT) was a "consultative assembly of knowledgeable persons for a specific purpose;" consisting of 6-7 "subteams"; involving 600-700 people; and culminating in a

---

[5] Plaintiff offers the same distinction in response to Defendants' citation of Natural Resources Defense Council v. Herrington, 637 F. Supp. 116, 119-20 (D.D.C. 1986) – "[m]eetings for the purpose of reporting on the operation of a nuclear reactor are completely dissimilar to the meetings that occurred here, which were required by statute for the purpose of getting expert input on the agency's development of performance standards for the Head Start program." Opp. at 12. This distinction, based on the subject-matter of the discussions, is not a relevant one in the determination of whether an assembled group is acting in such a way that FACA applies.

formal report, consisting of 1,000 pages. Id. at 1011-1012.[6] This is in sharp contrast to the free-wheeling and informal arrangement that typified the March 2008 performance standards meetings. See Brown Decl., ¶¶ 18-23.

In addition, authority from the General Services Administration, the government agency responsible for administering FACA pursuant to Executive Order 12024 (1974), provides further support for the proposition that the March 2008 performance standard meetings were not subject to FACA. GSA has developed a list of meetings that are not considered "advisory committees" for FACA purposes. Under 41 C.F.R. § 102-3.40(e) (2008),"[a]ny group that meets with a Federal official(s), including a public meeting, where advice is sought from the attendees on an individual basis and not from the group as a whole" is not subject to FACA. The March 2008 performance standard meetings fall into this category.

The substantial caselaw cited by Defendants in their opening brief demonstrates that a group in which individual opinions are shared are not – without more formal, structured action by the group – sufficient to trigger the requirements of FACA. In light of these holdings, and the lack of a formal structure to the activities of those attending the March 2008 performance standard meetings, this Court should grant Defendants' motion for summary judgment.

---

[6] Also, in Northwest Forest, FEMAT was established by the Director of the White House Office of Environmental Policy, with the Director herself acting as chairperson, to "direct and supervise the work of FEMAT." 846 F. Supp. at 1011. This executive committee gave instructions to FEMAT on what goals to pursue and how to pursue them (namely, dictating that the committee identify alternatives for the management of federal forest lands, employing an ecosystem approach, to maximize the forests' contribution). Id. See also Heartwood v. United States Forest Serv., 431 F. Supp. 2d 28, 35 (D.D.C. 2006) (holding FACA applied to "team" of scientists assembled for the "single purpose of drafting the ecological assessment to inform the USFS's policy-making").

### III. THIS COURT SHOULD NOT ORDER DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(f).

As a fall-back to its opposition to Defendants' summary judgment motion, Plaintiff asks this Court to order discovery under Federal Rule of Civil Procedure 56(f). The Court should deny this request, for three reasons.

First, in contrast to the statement in its Opposition, discovery is not the "norm" in FACA cases. Opp. at 13. Indeed, the only case Plaintiff is able to cite in support for its argument that discovery is the "norm" in FACA cases says no such thing. Instead, in Association of American Physicians and Surgeons, Inc. v. Clinton, 997 F.2d 898, 915 (D.C. Cir. 1993), the court did order discovery because there was "insufficient material in the record to determine the character of the working group and its members." There is no general rule whatsoever that discovery is permitted in FACA cases. Accordingly, the burden is on plaintiff to show that discovery is warranted under Rule 56(f).

Plaintiff has not made that showing. The Declaration of Scott Hodes (Plaintiff's counsel) notes that all of the "relevant evidence" concerning the March 2008 performance standards meetings "rest solely with the government." Hodes Decl., ¶ 3. To this end, then, Mr. Hodes declares that Plaintiff seeks discovery on "who the experts in attendance were at the March meetings, their organizational attachments, specific details of the workings of the March 2008 meetings, and the process by which the OHS used or is using the data culled from the meetings to recommend updates to Head Start performance standards." Id. at 6. Mr. Hodes also notes that all forms of discovery provided for by the Federal Rules of Civil Procedure would be brought to bear on this issue – interrogatories, admissions, requests for production, and "targeted

depositions." Id. at ¶ 7. Ultimately, however, Plaintiff's Rule 56(f) application is based on its view that it must have discovery on these facts because, with respect to its questions, the statements in the Brown Declaration either "provide no specific details or are merely conclusory in nature." Opp. at 13 n.3.[7] This characterization of the Brown Declaration is not accurate, as explained above.

Moreover, there is no bar to summary judgment, nor is there an automatic entitlement to 56(f) discovery, because the information at issue is possessed by the government. See, e.g., Byrd v. EPA, 174 F.3d 239, 248 n.8 (D.C. 1999) (granting summary judgment to EPA and denying discovery under Rule 56(f) where Byrd "merely alleged that there may well be knowledge on the part of EPA employees or undisclosed documents identifying additional contacts between EPA and the peer panel members . . .") (internal citation and quotation marks omitted); Huron, 917 F. Supp. at 42 (granting defendant's motion for summary judgment where information submitted by defendant showed that "industry group" lacked the "requisite formality and structure of an advisory committee"); Am. Society, 962 F. Supp. at 148-49 (granting defendant's motion for summary judgment supported by Declaration of Chief Policy Officer for the Bureau of Policy Development at Health Care Financing Administration).

Finally, courts routinely decline to order discovery where the basis for the 56(f) is essentially an argument that the opposing party has more information or that the declarant could be lying. See Byrd, 174 F.3d at 248 n.8; Strang v. U.S. Arms Control and Disarmament Agency,

---

[7] See also Pl. Resp. to Defs. St. of Mat. Facts Not in Genuine Dispute at ¶¶ 12-21 (bases for Plaintiff's inability to either admit or deny the statements includes assertions that "the evidence defendants have put before the Court consists of conclusory statements lacking the requisite specificity to carry the government's burden of proof, defendants have refused to respond fully to plaintiff's previous requests for information, and plaintiff needs discovery.").

864 F.2d 859, 861 (D.C. Cir. 1989) (desire to "test and elaborate the affidavit testimony already entered" does not justify Rule 56(f) discovery). Similarly, vague statements, which merely posit the existence of possible facts in contradiction to those outlined in the government's papers, fall far short of the mark required for Rule 56(f) discovery, since the rule was not intended to allow speculation to defeat summary judgment. See, e.g., Exxon Corp. v. FTC, 663 F.2d 120, 126-27 (D.C. Cir. 1980) ("It is well-settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact.") (quotation omitted); Greenberg v. FDA, 803 F.2d 1213, 1224 (D.C. Cir. 1986) ("If the court determines that the discovery sought appears irrelevant, or if discovery would be wholly speculative, relief under Rule 56(f) must be denied."); McVan v. Bolco Athletic Co., 600 F. Supp. 375, 378 (E.D. Pa. 1984) ("Rule 56(f) does not provide parties with a doctrinal vehicle for defeating motions for summary judgment based on unsupported speculation about what may be forthcoming if an extension is granted.").[8] While Plaintiff couches its Rule 56(f) application in terms of the information gap between the parties, the argument is essentially a complaint that the Brown Declaration is inadequate. Plaintiff contends that it should be given the chance to test the veracity of the statements in Director Brown's declaration, but this argument is insufficient to obtain Rule 56(f) relief.[9]

---

[8] See also Military Audit Project v. Casey, 656 F.2d 724, 751-52 (D.C. Cir. 1981) ("In the circumstances of the present case, we cannot find that the trial court abused its discretion in denying discovery to the appellants, when it appears that discovery would only have afforded an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits.") (internal citation and quotation marks omitted); Carpenter v. Federal Nat. Mortg. Ass'n, 174 F.3d 231, 237 (D.C. Cir. 2003) (affirming a district court's denial of a request for discovery because plaintiff's assertion that contrasting employment reviews raised an inference of fabrication was "a plainly conclusionary assertion without supporting facts").

[9] Strang, 864 F.2d at 861; Dunning v. Quander, 508 F.3d 8, 10 (D.C. Cir. 2007) (Rule 56(f) application denied where plaintiff only pointed to a desire to obtain discovery to "rebut

Nor is Rule 56(f) discovery warranted by Plaintiff's suggestion that it should be entitled to take discovery because it has "consistently pursued this information" but "Defendants have rebuffed every effort . . . to ascertain the underlying facts . . . ." Opp. at 13. While the parties did discuss whether there was any information that could be provided to Plaintiff to avoid the need to engage in motion practice, that process concluded because Plaintiff was not willing to provide Defendants with an exhaustive list of the information sought. Plaintiff declined to do so, because in its view, Head Start had "not provided any substantial information about the meeting and activities of the subject group despite repeated requests from Plaintiff for that information." See Defs. Mem. at Exs. 1-2. The government can hardly be faulted for declining to engage in an unlimited and undefined back-and-forth on the merits with its adversary.[10]

Finally, Plaintiff suggests that it needs discovery because it must know the "true nature" of the groups that met at the March 2008 performance standard meetings and "what actually happened" at the meetings. Not only do these generalized allegations fail to satisfy Rule 56(f), but they also show that Plaintiff has missed the point of these meetings in the first place. The March 2008 performance standards meetings were just the first step of a multi-stage process by which Head Start will be proposing, via notice and comment rulemaking, changes to its performance standards. Brown Decl., ¶ 23. Plaintiff – if it wishes – may be heard on the issue of revised performance standards during the comment period.

---

Agency's assertion that he was denied the positions because of his 'honesty and veracity,' 'conduct towards management,' and 'behavior that did not make him well suited for a leadership position'").

[10] Plaintiff's pre-suit letters to Director Brown's office are likewise irrelevant; if the March 2008 performance standard meetings were not subject to FACA, which they were not, then Director Brown had no obligation to provide Plaintiff with any information.

## CONCLUSION

Based on the foregoing, and on the arguments advanced in Defendants' opening memorandum, the March 2008 performance standards meetings were not subject to FACA, and summary judgment should be granted for Defendants.

Dated: August 15, 2008                                  Respectfully submitted,

AMY WEISER                                              GREGORY G. KATSAS
Office of the General Counsel                           Assistant Attorney General
Department of Health and
 Human Services                                         JEFFREY A. TAYLOR
                                                        United States Attorney

                                                        ELIZABETH J. SHAPIRO
                                                        Assistant Branch Director
                                                        Federal Programs Branch


                                                        \s\ *Diane Kelleher*
                                                        DIANE KELLEHER
                                                        Senior Counsel
                                                        United States Department of Justice
                                                        Civil Division, Rm. 7318
                                                        20 Massachusetts Ave, NW
                                                        Washington, D.C.  20530
                                                        Telephone:   (202) 514-4775
                                                        Fax:         (202) 616-8470
                                                        E-mail:      Diane.Kelleher@usdoj.gov

                                                        *Counsel for Defendants*